HEALTHCARE SERVICES GROUP, INC.,

          Plaintiff,

    v.

SKYLINE SERVICES GROUP, LLC,
JOSEPH SCHWARTZ, MICHAEL
SCHWARTZ, LOUIS SCHWARTZ,
HALLMARK CARE AND
REHABILITATION CENTER LLC,
ATLANTIC CARE AND
REHABILITATION CENTER LLC,
AUBURNDALE OAKS CARE AND
REHABILITATION CENTER LLC, CLEAR
WATER CARE AND REHABILITATION
CENTER LLC, LAUREL POINT CARE
AND REHABILITATION CENTER LLC,
WEST JACKSONVILLE CARE AND
REHABILITATION LLC, BATESVILLE
HOLDINGS LLC, BROADWAY HEALTH
HOLDINGS LLC, HERITAGE OF HOT
SPRINGS HOLDINGS LLC, MINE CREEK
HOLDINGS LLC, SEARCY HOLDINGS
LLC, HIGHLANDS OF LITTLE ROCK
RILEY HOLDINGS, LLC, HIGHLANDS OF
NORTH LITTLE ROCK JOHN ASHLEY
HOLDINGS, LLC, HIGHLANDS OF
MOUNTAIN VIEW SNF HOLDINGS, LLC,
HIGHLANDS OF LITTLE ROCK SOUTH
CUMBERLAND HOLDINGS, LLC,
HIGHLANDS OF LITTLE ROCK WEST
MARKHAM HOLDINGS, LLC, BEDFORD
GARDENS CARE AND
REHABILITATION CENTER LLC,
SIDNEY CARE AND REHABILITATION
CENTER, LLC, SORENSON CARE AND
REHABILITATION CENTER, LLC,
CLARKSON CARE AND
REHABILITATION CENTER, LLC,

Civil Action No.

VALHAVEN CARE AND
REHABILITATION CENTER, LLC,
COLUMBUS CARE AND
REHABILITATION CENTER, LLC,
COZAD CARE AND REHABILITATION
CENTER, LLC, FRANKLIN CARE AND
REHABILITATION CENTER, LLC,
FULLERTON CARE AND
REHABILITATION CENTER, LLC,
HARTINGTON CARE AND
REHABILITATION CENTER, LLC,
NEBRASKA CITY CARE AND
REHABILITATION CENTER, LLC,
NORFOLK CARE AND
REHABILITATION CENTER, LLC,
OMAHA METRO CARE AND
REHABILITATION CENTER, LLC,
O'NEILL CARE AND REHABILITATION
CENTER, LLC, PLATTSMOUTH CARE
AND REHABILITATION CENTER, LLC,
SCHUYLER CARE AND
REHABILITATION CENTER, LLC,
TEKAMAH CARE AND
REHABILITATION CENTER, LLC,
WAUSA CARE AND REHABILITATION
CENTER, LLC, GRAND ISLAND PARK
PLACE CARE AND REHABILITATION
CENTER, LLC, GRAND ISLAND
LAKEVIEW CARE AND
REHABILITATION CENTER, LLC,
NELIGH CARE AND REHABILITATION
CENTER, LLC, BROKEN BOW CARE
AND REHABILITATION CENTER, LLC,
SCOTTSBLUFF CARE AND
REHABILITATION CENTER, LLC,
CHASE COUNTY CARE AND
REHABILITATION CENTER SNF,
DOWNS CARE AND REHABILITATION
CENTER SNF, EDWARDSVILLE CARE
AND REHABILITATION CENTER SNF,
EL DORADO KS CARE AND
REHABILITATION CENTER SNF,
ESKRIDGE CARE AND
REHABILITATION CENTER SNF, KAW
RIVER CARE AND REHABILITATION
CENTER SNF, LANSING CARE AND
REHABILITATION CENTER SNF,
NEODESHA CARE AND
REHABILITATION CENTER SNF

:
:
:
:
:
:
:
:
:
:
:
:
(:
:
:
:
:
:
:
:
:
:
:
:

2

PARKWAY CARE AND
REHABILITATION CENTER SNF,
PITTSBURG CARE AND
REHABILITATION CENTER SNF,
SPRING HILL CARE AND
REHABILITATION CENTER SNF,
WAKEFIELD CARE AND
REHABILITATION CENTER SNF,
WELLINGTON CARE AND
REHABILITATION CENTER SNF,
WICHITA CARE AND REHABILITATION
CENTER SNF, WILSON CARE AND
REHABILITATION CENTER SNF,
ARMOUR CARE AND REHABILITATION
CENTER, LLC, IPSWICH CARE AND
REHABILITATION CENTER, LLC,
GROTON CARE AND REHABILITATION
CENTER, LLC, SALEM CARE AND
REHABILITATION CENTER, LLC,
COVINGTON HEIGHTS CARE AND
REHABILITATION CENTER, LLC,
REDFIELD CARE AND
REHABILITATION CENTER, LLC,
CLARK CARE AND REHABILITATION
CENTER, LLC, ARLINGTON CARE AND
REHABILITATION CENTER, LLC,
BLACK HILLS CARE AND
REHABILITATION CENTER, LLC,
BELLA VISTA CARE AND
REHABILITATION CENTER, LLC, LAKE
NORDEN CARE AND REHABILITATION
CENTER, LLC, MEADOWBROOK CARE
AND REHABILITATION CENTER, LLC,
MOBRIDGE CARE AND
REHABILITATION CENTER, LLC,
PRAIRIE HILLS CARE AND
REHABILITATION CENTER, LLC,
PIERRE CARE AND REHABILITATION
CENTER, LLC, MILBANK CARE AND
REHABILITATION CENTER, LLC,
MADISON CARE AND
REHABILITATION CENTER, LLC,

SL1 1468777v2 104212.00364

WATERTOWN CARE AND
REHABILITATION CENTER, LLC,
CHRISTIAN DOLE, SAMANTHA
FULLER, BRANTON WALKER,
SHARECA TYSON, PRESCIOUS
JEFFREY, MOUSSA BARO, ALEX CRUZ,
ANGELA GIL, ANGELICA ORELLANA,
AUDREY CARLSON, CHER JURACEK,
DAYLENE BAKER, DEBBIE CROOM,
DEIRDRE JELKS, DIANE BATES,
JASMINE WENGLER, LORI CAHILL,
LYNELL SCHOMAKER, NANCY
COOVER, NOLBERTO DABRIEL, PATTI
URBANEK, DARYL TROUT, YOLANDA
OCHOA,

                 Defendants.

## **COMPLAINT**

As a result of the Defendants' fraudulent, willful, and intentional misrepresentations, as well as other tortious and improper activities including tortiously interfering with Plaintiff's contracts with its employees, and resulting breach of those agreements, Plaintiff Healthcare Services Group, Inc. ("HCSG") files these claims seeking monetary damages and injunctive relief. Such relief is warranted and necessary to remedy the Defendants' egregious activity and the substantial harm caused to HCSG. This damage and harm results from the Skyline Defendants' efforts to increase the number of long-term care facilities operated under their control without the necessary resources, of either funds or personnel, to properly provide services. For example, notwithstanding the repeated and sustained assurances and guarantees of Joseph, Michael, and Louis Schwartz, the Skyline Defendants have repeatedly refused to compensate HCSG for services provided. In spite of that, upon information and belief, the Skyline Defendants have submitted cost reimbursement requests to various state and federal governments for the same unpaid services provided by HCSG. Furthermore, after HCSG ceased providing services to mitigate the consequences of the Skyline Defendants' wrongful acts,

4

Skyline knowingly and intentionally hired HCSG employees subject to restrictive covenants in order to utilize them at the facilities and benefit from HCSG's confidential and proprietary information to help keep their corrupt operation afloat

Therefore, as set forth in greater detail below, HCSG seeks a judgment of monetary damages and injunctive relief against each of the Skyline and individual Defendants for breach of contract, unjust enrichment, promissory estoppel, tortious interference, and unjust enrichment.

## THE PARTIES AND AFFILIATED ENTITIES

1. Plaintiff HCSG is a Pennsylvania corporation with its principal place of business in Bensalem, Pennsylvania.

2. HCSG provides housekeeping, laundry, dietary and nutrition services to long-term care facilities.

3. Upon information and belief, Joseph Schwartz is a citizen of the State of New York and maintains his domicile within the state of New York. Joseph Schwartz maintains his business office at 505 Marlboro Road, Suite 5, Wood Ridge, New Jersey. Upon information and belief, Joseph Schwartz is an owner and/or executive officer of Skyline Services Group, LLC.

4. Upon information and belief, Michael Schwartz is a citizen of the State of New York and maintains his domicile within the state of New York. Michael Schwartz maintains his business office at 505 Marlboro Road, Suite 5, Wood Ridge, New Jersey. Upon information and belief, Michael Schwartz is an owner and/or executive officer of Skyline Services Group, LLC.

5. Upon information and belief, Louis Schwartz is a citizen of the State of New York and maintains his domicile within the state of New York. Louis Schwartz maintains his business office at 505 Marlboro Road, Suite 5, Wood Ridge, New Jersey. Upon information and belief, Louis Schwartz is an owner and/or executive officer of Skyline Services Group, LLC.

5

6. Upon information and belief, Skyline Services Group, LLC ("Skyline") is a New Jersey limited liability company with a principal place of business at 505 Marlboro Road, Suite 5, Wood Ridge, New Jersey. (Skyline, Joseph Schwartz, Michael Schwartz, and Louis Schwartz are collectively referred to as the "Skyline Defendants.")

7. Upon information and belief, since 2015 the Skyline Defendants, collectively, individually, or some combination thereof, have acquired control and/or ownership of over 110 long-term care facilities across the country.

8. Upon information and belief, in or about November 2015, the Skyline Defendants acquired control and/or ownership of the long-term care facility known as Hallmark Care and Rehabilitation Center LLC located at 1123 Rockdale Avenue, New Bedford, Massachusetts 02740 (the "First Massachusetts Defendant").

9. Upon information and belief, in or about November 2015, the Skyline Defendants acquired control and/or ownership of the following five long-term care facilities in Florida (the "Florida Defendants"):

(a) Atlantic Care and Rehabilitation Center LLC, located at 3663 15th Avenue, Vero Beach, FL 32960 ("Atlantic Care");

(b) Auburndale Oaks Care and Rehabilitation Center LLC, located at 919 Old Winter Haven Road, Auburndale, FL 34947 ("Auburndale Oaks");

(c) Clear Water Care and Rehabilitation Center LLC, located at 2055 Palmetto Street, Clearwater, Florida 33765 ("Clear Water");

(d) Laurel Point Care and Rehabilitation Center LLC, located at 703 South 29th Street, Fort Pierce, FL 34947 ("Laurel Point"); and

(e) West Jacksonville Care and Rehabilitation LLC, located at 1650 Fouraker Road, Jacksonville, FL 32221 ("West Jacksonville").

6

10. Upon information and belief, in or about December 2015, the Skyline Defendants acquired control and/or ownership of the following five long-term care facilities in Arkansas (the "First Arkansas Defendants"):

    (a) Batesville Holdings LLC, located at 1975 White Drive, Batesville AR 72501 ("Batesville");

    (b) Broadway Health Holdings LLC, located at 800 West Broadway Street, West Memphis AR 72301 ("Broadway");

    (c) Heritage of Hot Springs Holdings LLC, located at 552 Golf Links Road, Hot Springs AR 71901 ("Heritage");

    (d) Mine Creek Holdings LLC, located at 1407 North Main Street, Nashville AR 71852 ("Mine Creek"); and

    (e) Searcy Holdings LLC, located at 1205 Skyline Drive, Searcy AR 72143 ("Searcy").

11. Upon information and belief, in or about March 2016, the Skyline Defendants acquired control and/or ownership of the following five long-term care facilities in Arkansas (the "Second Arkansas Defendants"):

    (a) Highlands of Little Rock Riley Holdings, LLC, located at 8701 Riley Drive, Little Rock, Arkansas 72205 ("Highlands of LRWH");

    (b) Highlands of North Little Rock John Ashley Holdings, LLC, located at 2501 John Ashley Dr., North Little Rock, Arkansas 72114 ("Highlands of NLR");

    (c) Highlands of Mountain View SNF Holdings, LLC, located at 706 Oak Grove St., Mountain View, Arkansas 72560 ("Highlands of MV");

7

(d) Highlands of Little Rock South Cumberland Holdings, LLC, located at 1516 South Cumberland St., Little Rock, Arkansas 72202 ("Highlands LRC"); and

(e) Highlands of Little Rock West Markham Holdings, LLC, located at 5720 W Markham Street, Little Rock, Arkansas 72205 ("Highlands LRM").

12. Upon information and belief, in or about September 2016, the Skyline Defendants acquired control and/or ownership of the long-term care facility known as Bedford Gardens Care and Rehabilitation Center LLC, located at 4586 Acushnet Avenue, New Bedford, MA 02745 (the "Second Massachusetts Defendant")

13. Upon information and belief, in or about October 2016, the Skyline Defendants acquired control and/or ownership of the following twenty-two (22) long-term care facilities in Nebraska (the "Nebraska Defendants"):

(a) Sidney Care and Rehabilitation Center, LLC, located at 1435 Toledo St., Sidney, NE 69162-2166 ("Sidney");

(b) Sorenson Care and Rehabilitation Center, LLC, located at 4809 Redman Ave, Omaha, NE 68104-1842 ("Sorenson");

(c) Clarkson Care and Rehabilitation Center, LLC, located at 212 Sunrise Dr., Clarkson, NE 68629-4042 ("Clarkson");

(d) Valhaven Care and Rehabilitation Center, LLC, located at 300 West Meigs St., Valley, NE 68064 ("Valhaven");

(e) Columbus Care and Rehabilitation Center, LLC, located at 2855 40th Ave., Columbus, NE 68601 ("Columbus");

(f) Cozad Care and Rehabilitation Center, LLC, located at 318 West 18th Street, Cozad, NE 69130 ("Cozad");

8

(g) Franklin Care and Rehabilitation Center, LLC, located at 1006 M Street, Franklin, NE 68939 ("Franklin");

(h) Fullerton Care and Rehabilitation Center, LLC, located at 202 North Ester Street, Fullerton, NE 68638 ("Fullerton");

(i) Hartington Care and Rehabilitation Center, LLC, located at 401 West Darlene Street, Hartington, NE 68739 ("Hartington");

(j) Nebraska City Care and Rehabilitation Center, LLC, located at 1420 North 10th Street, Nebraska City, NE 68410 ("Nebraska City");

(k) Norfolk Care and Rehabilitation Center, LLC, located at 1900 Vicki Lane, Norfolk, NE 68701 ("Norfolk");

(l) Omaha Metro Care and Rehabilitation Center, LLC, located at 5505 Grover Street, Omaha, NE 68106 ("Omaha");

(m) O'Neill Care and Rehabilitation Center, LLC, located at 1102 North Harrison, Hwy 281, O'Neill, NE 68763 ("O'Neill");

(n) Plattsmouth Care and Rehabilitation Center, LLC, located at 602 South 18th Street, Plattsmouth, NE 68048 ("Plattsmouth");

(o) Schuyler Care and Rehabilitation Center, LLC, located at 2023 Colfax Avenue, Schuyler, NE 68661 ("Schuyler");

(p) Tekamah Care and Rehabilitation Center, LLC, located at 823 M Street, Tekamah, NE 68061 ("Tekamah");

(q) Wausa Care and Rehabilitation Center, LLC, located at 703 South Vivian Street, Wausa, NE 68786 ("Wausa");

(r) Grand Island Park Place Care and Rehabilitation Center, LLC, located at 610 North Darr, Grand Island, NE 68803 ("Grand Island Park");

SL1 1468777v2 104212.00364

(s) Grand Island Lakeview Care and Rehabilitation Center, LLC, located at 1405 West Highway 34, Grand Island, NE 68801 ("Grand Island Lakeview");

(t) Neligh Care and Rehabilitation Center, LLC, located at 1100 North T Street, Neligh, NE 68756 ("Neligh");

(u) Broken Bow Care and Rehabilitation Center, LLC, located at 224 East South E Street, Broken Bow, NE 68822 ("Broken Bow"); and

(v) Scottsbluff Care and Rehabilitation Center, LLC, located at 111 West 36th Street, Scottsbluff, NE 69162 ("Scottsbluff").

14. Upon information and belief, in or about November 2016, the Skyline Defendants acquired control and/or ownership of the following fifteen (15) long-term care facilities in Kansas (the "Kansas Defendants"):

(a) Chase County Care and Rehabilitation Center SNF, located at 612 Walnut St., Cottonwood Falls, KS 66845-9798 ("Chase County");

(b) Downs Care and Rehabilitation Center SNF, located at 1218 Kansas St., Downs, KS 67437-1404 ("Downs");

(c) Edwardsville Care and Rehabilitation Center SNF, located at 751 Blake St., Edwardsville, KS 66111-1338 ("Edwardsville");

(d) El Dorado KS Care and Rehabilitation Center SNF, located at 900 Country Club Ln, El Dorado, KS 67042-4206 ("El Dorado");

(e) Eskridge Care and Rehabilitation Center SNF, located at 505 N Main St., Eskridge, KS 66423-9618 ("Eskridge");

(f) Kaw River Care and Rehabilitation Center SNF, located at 750 Blake St., Edwardsville, KS 66111-1339 ("Kaw River");

SL1 1468777v2 104212.00364

(g) Lansing Care and Rehabilitation Center SNF, located at 210 Plaza Drive Holiday Plaza, Lansing, KS 66043-1381 ("Lansing");

(h) Neodesha Care and Rehabilitation Center SNF, located at 1626 N 8TH St., Neodesha, KS 66757-1239 ("Neodesha");

(i) Parkway Care and Rehabilitation Center SNF, located at 749 Blake St., Edwardsville, KS 66111-1338 ("Parkway");

(j) Pittsburg Care and Rehabilitation Center SNF, located at 1005 E Centennial Dr, Pittsburg, KS 66762-6603 ("Pittsburg");

(k) Spring Hill Care and Rehabilitation Center SNF, located at 251 E Wilson St., Spring Hill, KS 66083-8713 (the "Spring Hill");

(l) Wakefield Care and Rehabilitation Center SNF, located at 509 Grove St., Wakefield, KS 67487-9159 ("Wakefield");

(m) Wellington Care and Rehabilitation Center SNF, located at 102 W Botkin St., Wellington, KS 67152-2302 ("Wellington");

(n) Wichita Care and Rehabilitation Center SNF, located at 4007 E Lincoln St., Wichita, KS 67218-2111 ("Wichita"); and

(o) Wilson Care and Rehabilitation Center SNF, located at at 611 31ST St., Wilson, KS 67490-8740 ("Wilson").

15. Upon information and belief, in or about January 2017, the Skyline Defendants acquired control and/or ownership of the following eighteen (18) long-term care facilities in South Dakota (the "South Dakota Defendants"):

(a) Armour Care and Rehabilitation Center, LLC, located at 106 Braddock, Armour, SD 57313 ("Armour");

11

(b) Ipswich Care and Rehabilitation Center, LLC, located at 617 Bloemendaal Drive, Ipswich, SD 57541("Ipswich");

(c) Groton Care and Rehabilitation Center, LLC, located at 1106 North 2nd Street, Groton, SD 57446 ("Groton");

(d) Salem Care and Rehabilitation Center, LLC, located at 500 Colonial Drive, Salem, SD 57058 ("Salem");

(e) Covington Heights Care and Rehabilitation Center, LLC, located at 3900 South Cathy Avenue, Sioux Falls, SD 57016 ("Covington");

(f) Redfield Care and Rehabilitation Center, LLC, located at 1015 Third Street East, Ridgefield, SD 57469 ("Redfield");

(g) Clark Care and Rehabilitation Center, LLC, located at 201 8th Street NW, Clark, SD 57225 ("Clark");

(h) Arlington Care and Rehabilitation Center, LLC, located at 120 Care Center Road, Arlington, SD 57212 ("Arlington");

(i) Black Hills Care and Rehabilitation Center, LLC, located at 1620 N. 7th Street, Rapid City, SD 57701 ("Black Hills");

(j) Bella Vista Care and Rehabilitation Center, LLC, located at 302 St. Cloud Avenue, Rapid City, SD 57701 ("Bella Vista");

(k) Lake Norden Care and Rehabilitation Center, LLC, located at 803 Park Street, Lake Norden, SD 57248 ("Lake Norden");

(l) Meadowbrook Care and Rehabilitation Center, LLC, located at 2500 Arrowhead Drive, Rapid City, SD 57702 ("Meadowbrook");

(m) Mobridge Care and Rehabilitation Center, LLC, located at 1100 Fourth Avenue East, Mobridge, SD 57601 ("Mobridge");

12

(n) Prairie Hills Care and Rehabilitation Center, LLC, located at 916 Mountain View Road, Rapid City, SD 57702 ("Prairie Hills");

(o) Pierre Care and Rehabilitation Center, LLC, located at 950 East Park Street, Pierre, SD 57501 ("Pierre");

(p) Milbank Care and Rehabilitation Center, LLC, located at 1103 South Second Street, Milbank, SD 57252 ("Milbank");

(q) Madison Care and Rehabilitation Center, LLC, located at 718 NE 8th Street, Madison, SD 57042 ("Madison"); and

(r) Watertown Care and Rehabilitation Center, LLC, located at 415 4th Avenue NE, Watertown, SD 57201 ("Watertown").

16. Each individual entities comprising the First Massachusetts Defendants, the Florida Defendants, the First Arkansas Defendants, the Second Arkansas Defendants, the Nebraska Defendants, the Kansas Defendants, and the South Dakota Defendants are referred to herein individually as a "Facility" and collectively as the "Facilities."

17. Upon information and belief, Christian Dole, Samantha Fuller, Branton Walker, Shareca Tyson, Precious Jeffrey, and Moussa Baro are citizens of the state of Arkansas with addresses as follows:

(a) Christian Dole, 19 Azalea Drive, Cabot, AR 72023;

(b) Samantha Fuller, 1420 Breckinridge Drive, Apt. 28, Little Rock, AR 72227;

(c) Branton Walker, 10023 Stillmen Drive, Little Rock, AR 72209;

(d) Shareca Tyson, 8500 Winston Street, Little Rock, AR 72209;

(e) Jeffrey Precious, 2704 Bruce Street, Conway, AR 72034;

(f) Moussa Baro, 2 Twin Pine Place, Little Rock, AR 72210.

13

18. Upon information and belief, Alex Cruz is a citizen of the State of Rhode Island with an address of 410 Broad Street, Central Falls, RI.

19. Upon information and belief, Angela Gil, Angelica Orellana, Audrey Carlson, Cher Juracek, Daylene Baker, Debbie Croom, Deirdre Jelks, Diane Bates, Jasmine Wengler, Lori Cahill, Lynell Schomaker, Nancy Coover, Nolberto Dabriel, and Patti Urbanek are citizens of the state of Nebraska with addresses as follows:

   (a) Angela Gil, 3115 7th Street, Columbus, NE 68601;

   (b) Angelica Orellana, 1303 Merdian Avenue, Cozad, NE 69130;

   (c) Audrey Carlson, 424 Hastings Norfolk, NE 68701;

   (d) Cher Juracek, 201 S. Pine Street, Norfolk, NE 68701

   (e) Daylene Baker, 118 N. Carey Street, Grand Island, NE 68803;

   (f) Debbie Croom, 424 NE Street, Ewing, NE 68735;

   (g) Deirdre Jelks, 5326 N. 27th Avenue, Omaha, NE 68111

   (h) Diane Bates, 1154 5th Avenue, Sidney, NE 69162;

   (i) Jasmine Wengler, 346 Gold Street, Riverton, NE 68972;

   (j) Lori Cahill, 217 W. 6th Street, Clarkson, NE 68629;

   (k) Lynell Schomaker, 702 S. 10th Street, Nebraska City, NE 68410;

   (l) Nancy Coover, 910 R Street, Neligh, NE 68756;

   (m) Nolberto Gabriel, 412 N. Harlen Avenue, Harvard, NE 68944

   (n) Patricia Urbanek, 1159 Road P, Clarkson, NE 68629.

20. Upon information and belief, Daryl Trout is a citizen of the State of Kansas with an address of 407 Cedar Street, Eskridge, KS 66423.

21. Upon information and belief, Yolanda Ochoa is a citizen of the State of Missouri with an address of 3603 E. 28th Street, Kansas City, MO 64128.

14

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

23. This Court has jurisdiction over the Facilities because each of these entities agreed to receive services provided by HCSG pursuant to the terms of service agreements entered into by HCSG and the prior operators of each of the Facilities, and such service agreements provide for jurisdiction and venue in the United States District Court for the Eastern District of Pennsylvania and/or because the Facilities had sufficient contact with Plaintiff in this District to subject them to jurisdiction and, moreover, knowingly and intentionally caused significant harm to Plaintiff in this District.

24. This Court has jurisdiction over Joseph Schwartz because he, on behalf of Skyline, agreed to provide payment to HCSG in Pennsylvania for services provided at each of the Facilities and personally undertook actions subjecting him to jurisdiction in this Court.

25. This Court has jurisdiction over Michael Schwartz, Louis Schwartz, and Skyline because (a) Michael Schwartz entered into a promissory note on behalf of Skyline and as a personal guarantor consenting to jurisdiction and venue in the United States District Court for the Eastern District of Pennsylvania, and (b) Michael Schwartz, Louis Schwartz, and Skyline made payments to HCSG in Pennsylvania for services rendered by HCSG and personally undertook actions subjecting him to jurisdiction in this Court.

26. The Court has jurisdiction over Christian Dole, Samantha Fuller, Branton Walker, Shareca Tyson, Precious Jeffrey, Moussa Baro, Alex Cruz, Angela Gil, Angelica Orellana, Audrey Carlson, Cher Juracek, Daylene Baker, Debbie Croom, Deirdre Jelks, Diane Bates, Jasmine Wengler, Lori Cahill, Lynell Schomaker, Nancy Coover, Nolberto Dabriel, Patti

15

Urbanek, Daryl Trout and Yolanda Urbanek pursuant to restrictive covenant agreements entered into by each of these individuals that provides for jurisdiction and venue in the United States District Court for the Eastern District of Pennsylvania in this Court and/or because the foregoing Defendants had sufficient contact with Plaintiff in this District to subject them to jurisdiction and, moreover, knowingly and intentionally caused significant harm to Plaintiff in this District.

27. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving raise to HCSG's claims occurred in the Eastern District of Pennsylvania.

## HCSG PROVIDES SERVICES TO FACILITIES FOLLOWING ACQUISITION BY SKYLINE DEFENDANTS

28. HCSG provided services to each of the Facilities prior to the Skyline Defendants acquisition of control and/or ownership of the Facilities pursuant to certain service agreements in effect between HCSG, on the one hand, and the Facilities, on the other, (the "Service Agreements").

29. Each of the Service Agreements provides for jurisdiction and venue in the United States District Court for the Eastern District of Pennsylvania.

30. Upon information and belief, the Skyline Defendants were aware, through due diligence and communications with HCSG prior to the acquisition of control and/or ownership of each of the Facilities, that HCSG provided services to the Facilities pursuant to the Service Agreements.

31. The Skyline Defendants, upon acquiring and controlling each of the Facilities, assumed each of the Service Agreements for each Facility.

### HCSG Provides Services to the First Massachusetts Defendant

32. Upon information and belief, in or about November 2015, the Skyline Defendants acquired control and/or ownership of the First Massachusetts Defendant and assumed the respective Service Agreement.

16

33. On or about November 1, 2015, HCSG began providing housekeeping services to the First Massachusetts Defendant pursuant to a service agreement effective November 1, 2015 for the benefit of the Skyline Defendants and the First Massachusetts Defendant.

34. On or about March 11, 2016, HCSG ceased providing services to the First Massachusetts Defendant due to non-payment by the Skyline Defendants and/or the First Massachusetts Defendant.

## HCSG Provides Services to the Florida Defendants

35. Upon information and belief, in or about November 2015, the Skyline Defendants acquired control and/or ownership of the Florida Defendants.

36. On or about November 16, 2015, HCSG began providing housekeeping services to the Florida Defendants pursuant to service agreements for the benefit of the Skyline Defendants and the Florida Defendants.

37. On or about March 11, 2016, HCSG ceased providing services at the Florida Defendants due to non-payment by the Skyline Defendants and/or the Florida Defendants.

## HCSG Provides Services to the First Arkansas Defendants

38. Upon information and belief, in or about December 2015, the Skyline Defendants acquired control and/or ownership of the First Arkansas Defendants.

39. On or about December 1, 2015, HCSG began providing services to the First Arkansas Defendants for the benefit of the Skyline Defendants and the First Arkansas Defendants.

40. On or about December 11, 2015, HCSG sent proposed service agreements for the First Arkansas Defendants to Skyline Chief Financial Officer Brandon Augustyniak and others.

41. On or about December 22, 2015, HCSG sent proposed bridge agreements for the First Arkansas Defendants to Michael Schwartz and Brandon Augustyniak.

17

42. The proposed bridge agreements provided that the Service Agreements in place prior to the Skyline Defendants' acquisition of control and/or ownership of the First Arkansas Defendants would govern the relationship between the parties until such time as the parties entered into a new service agreements.

43. On or about March 11, 2016, HCSG ceased providing services to the First Arkansas Defendants due to non-payment by the Skyline Defendants.

### HCSG Provides Services to the Second Arkansas Defendants

44. Upon information and belief, in or about March 2016, the Skyline Defendants acquired control and/or ownership of the Second Arkansas Defendants.

45. On or about April 1, 2016, HCSG began providing services to the Second Arkansas Defendants for the benefit of the Skyline Defendants and the Second Arkansas Defendants.

46. On or about June 1, 2016, HCSG emailed the Skyline Defendants and Brandon Augustyniak regarding payment and finalizing service agreements for each of the Second Arkansas Defendants.

47. From on or about August 20 to August 24, 2016, HCSG ceased providing services at the Second Arkansas Defendants due to non-payment by the Skyline Defendants and/or the Second Arkansas Defendants.

48. As of August 25, 2016, the following payments were due to HCSG from the Skyline Defendants for services rendered at the Second Arkansas Defendants:

   (a)  Highlands of NLR:  $380,523.64

   (b)  Highlands LRC:  $275,080.62

   (c)  Highlands LRM:  $395,796.17

   (d)  Highlands of LRWH: $490,958.83

18

(e) Highlands of MV: $130,563.31

----

Total: $1,672,922.57

## HCSG Provides Services to the Nebraska Defendants

49. Upon information and belief, in or about October 2016, the Skyline Defendants acquired control and/or ownership of the Nebraska Defendants.

50. On or about September 30, 2016, HCSG ceased providing services to nineteen (19) of the twenty-two (22) Nebraska Defendants.

51. On or about October 1, 2016, HCSG began providing services to three (3) of the Nebraska Defendants – Sidney, Clarkson, and Sorenson – for the benefit of the Skyline Defendants and Sidney, Clarkson, and Sorenson.

52. On or about October 14, 2016, HCSG ceased providing services to Sidney due to non-payment by the Skyline Facilities and/or Sidney.

53. On or about October 17, 2016, HCSG ceased providing services to Clarkson and Sorenson due to non-payment by the Skyline Facilities and/or Clarkson and/or Sorenson.

## HCSG Provides Services to the Kansas Defendants

54. Upon information and belief, in or about November 2016, the Skyline Defendants acquired control and/or ownership of the Kansas Defendants.

55. On or about October 28, 2016, HCSG provided Michael Schwartz and Brandon Augustyniak proposed service agreements for the Kansas Defendants as well as for Sidney, Clarkson, and Sorenson.

56. On or about November 1, 2016, HCSG began to provide service to the Kansas Defendants for the benefit of the Skyline Defendants and the Kansas Defendants.

19

57. On or about November 1, 2016, one of the Kansas Defendants, Pittsburg, executed a service agreement with HCSG ("Pittsburg Service Agreement").

58. On or about February 17, 2017, HCSG ceased providing services at the Kansas Defendants due to non-payment by the Skyline Defendants and/or the Kansas Defendants.

59. As of the date of this Complaint, HCSG is owed not less than $270,130.16 for services rendered to the Kansas Defendants.

## HCSG Provides Services to the South Dakota Defendants

60. Upon information and belief, in or about January 2017, the Skyline Defendants acquired control and/or ownership of the South Dakota Defendants.

61. On or about January 1, 2017, HCSG began providing services to the South Dakota Defendants for the benefit of the Skyline Defendants and the South Dakota Defendants.

62. On January 14, 2017, HCSG ceased providing services at the South Dakota Defendants due to non-payment by the Skyline Defendants and/or the South Dakota Defendants.

63. As of the date of this Complaint, HCSG is owed not less than $106,251.66 for services rendered to the South Dakota Defendants.

## Skyline Agrees to Pay HCSG

64. Joseph Schwartz, Michael Schwartz, Louis Schwartz, and Brandon Augustyniak (collectively, the "Skyline Principals") each assured and guaranteed to representatives of HCSG that if HCSG continued to perform the services specified in the Service Agreements at each of the Facilities, HCSG would be paid by Skyline.

65. For example, on or about April 5, 2016, representatives of HCSG met with Joseph Schwartz in Spring Valley, New York.

20

66. During the meeting, Joseph Schwartz repeatedly represented, warranted, and assured HCSG's representatives that HCSG would be paid by Skyline if it continued to provide services to the Facilities that had been acquired by Skyline at that point.

67. Joseph Schwartz and the other Skyline Principals made similar representations from April 1, 2016 through October 28, 2016.

68. Upon information and belief, each of the Skyline Principals had actual and apparent authority to make all of the representations that were made and thereby bind Skyline to those representations.

69. HCSG reasonably relied on the representations made by the Skyline Principals and continued providing services at each of the Facilities consistent with the terms of the Service Agreements.

70. As a result of the representations of the Skyline Principals that HCSG would be paid by Skyline for all services rendered at each of the Facilities, HCSG provided services to the Facilities as described above.

71. HCSG regularly sent monthly invoices to Skyline corporate headquarters seeking payment for these services.

72. Upon information and belief, the types of expenses provided by HCSG to the Facilities are recoverable by Skyline and/or the Operators of the Facilities under Medicare.

73. HCSG is unable to determine at this time whether Skyline and/or the Operators of the Facilities sought payment under Medicare for the services provided by HCSG.

74. Regardless of whether Skyline and/or the Operators of the Facilities sought reimbursement under Medicare for services provided by HCSG, Skyline continues to ignore HCSG's requests for payment.

21

**Outstanding Payments Due to HCSG for Services Rendered to the First Massachusetts Defendants, the Florida Defendants, and the Second Arkansas Defendants**

75. In October 2016, Skyline, the First Massachusetts Defendants, the Florida Defendants, and the Second Arkansas Defendants, owed HCSG not less than $1,618,522.27 for unpaid services that HCSG provided to the First Massachusetts Defendants, the Florida Defendants, and the Second Arkansas Defendants.

76. Skyline made a payment of $400,000 towards this balance on October 14, 2016.

77. Skyline made another payment of $250,000 toward this balance on October 31, 2016.

78. Following Skyline's payments on October 14, 2016 and October 31, 2016, the outstanding balance due to HCSG for services provided to the First Massachusetts Defendants, the Florida Defendants, and the Second Arkansas Defendants was $968,522.27.

79. On October 28, 2016, Michael Schwartz, on behalf of Skyline and as a personal guarantor executed a promissory note to provide for the payment of $600,000 of the remaining $968,522.27 due to HCSG for services provided to the First Massachusetts Defendants, the Florida Defendants, and the Second Arkansas Defendants (the "Promissory Note").

80. Pursuant to the Promissory Note, Skyline was required to make monthly payments of $150,000 from November 2016 through February 2017.

81. Skyline made the required monthly payments in November 2016, December 2016, and January 2017.

82. Skyline failed to make the required February 26, 2017 payment in the amount of $150,000 and is in default of the Promissory Note.

83. Pursuant to the Promissory Note, HCSG is entitled to a $7,500 late charge, interest, and attorneys' fees related to the collection of funds.

SL1 1468777v2 104212.00364

84. Accordingly, Skyline, and Michael Schwartz as personal guarantor, owe HCSG the $150,000 balance due on the Promissory Note, a $7,500 late charge, interest, and attorneys' fees.

85. In addition, Skyline, the First Massachusetts Defendant, the Florida Defendants, and the Second Arkansas Defendants owe the remaining $368,522.27 due for services rendered by HCSG to the First Massachusetts Defendants, the Florida Defendants, and the Second Arkansas Defendants.

**Outstanding Payments Due to HCSG for Services Rendered to the Kansas Defendants and South Dakota Defendants**

86. As explained above, HCSG provided services to the Kansas Defendants from on or about November 1, 2016 through on or about February 17, 2017.

87. Skyline has not made any payments to HCSG for these services.

88. As of the date of this Complaint, HCSG is owed not less than $270,130.16 for services rendered to the Kansas Defendants.

89. As explained above, HCSG provided services at the South Dakota Defendants from on or about January 1, 2017 to on or about January 14, 2017.

90. Defendants have not made any payments to HCSG for these services.

91. As of the date of this Complaint, HCSG is owed not less than $106,251.66 for services rendered to the South Dakota Defendants.

**Skyline Interferes with HCSG's Contractual Rights**

92. HCSG employed managers at each of the Facilities.

93. HCSG's managers who worked in the Facilities entered into binding and enforceable Restrictive Covenant Agreements ("RCAs") with HCSG.

94. Skyline and the Facilities had notice of the RCAs.

SL1 1468777v2 104212.00364

95. Among others, the following managers entered into RCAs while they were employed by HCSG and working in the Facilities:

(a) Christian Dole was an Account Manager with HCSG at the Highlands of NLR. On or about July 14, 2016, Dole signed an RCA with HCSG.

(b) Samantha Fuller was an Account Manager with HCSG at the Highlands of LRWH. On or about May 4, 2016, Fuller signed an RCA with HCSG.

(c) Branton Walker was an Account Manager with HCSG at the Highlands of LRC. On or about March 10, 2014, Walker signed an RCA with HCSG.

(d) Shareca Tyson was an Account Manager with HCSG at the Highlands of NLR. On or about April 8, 2016, Tyson signed an RCA with HCSG.

(e) Precious Jeffrey was an Account Manager with HCSG at the Highlands of LRM. On or about June 1, 2016, Jeffrey signed an RCA with HCSG.

(f) Moussa Baro was an Account Manager, Area Manager, and District Manager with HCSG among the Second Arkansas Defendants. On or about May 19, 2014, Baro signed an RCA with HCSG.

(g) Alex Cruz was an Account Manager with HCSG at the Second Massachusetts Facility. On or about March 7, 2016, Cruz signed an RCA with HCSG.

(h) Angela Gil was an Account Manager with HCSG at Columbus. On or about July 1, 2015, Gil signed an RCA with HCSG.

(i) Angelica Orellana was an Account Manager with HCSG at Cozad. On or about December 1, 2014, Orellana signed an RCA with HCSG.

(j) Audrey Carlson was an Account Manager with HCSG at Wausa. On or about January 10, 2016, Carlson signed an RCA with HCSG.

24

(k) Cher Juracek was an Area Manager with HCSG at Norfolk. On or about December 16, 2015, Juracek signed an RCA with HCSG.

(l) Daylene Baker was an Account Manager with HCSG at Grand Island Lakeview. On or about June 2, 2015 Baker signed an RCA with HCSG.

(m) Debbie Croom was an Account Manager with HCSG at O'Neill. On or about February 22, 2016, Croom signed an RCA with HCSG.

(n) Jasmine Wengler was an Account Manager with HCSG at Franklin. On or about June 6, 2015, Wengler signed an RCA with HCSG.

(o) Lynell Schomaker was an Account Manager with HCSG at Nebraska City. On or about March 2, 2015, Schomaker signed an RCA with HCSG.

(p) Nancy Coover was an Account Manager with HCSG at Neligh. On or about November 12, 2016, Coover signed an RCA with HCSG.

(q) Nolberto Gabriel was an Account Manager with HCSG at Grand Island Park. On or about April 21, 2016, Gabriel signed an RCA with HCSG.

(r) Patricia Urbanek was an Account Manager with HCSG at Schuyler. On or about July 9, 2015, Urbanek signed an RCA with HCSG.

(s) Daryl Trout was an Account Manager with HCSG at Eskridge. On or about June 9, 2015, Trout signed an RCA with HCSG.

(t) Yolanda Ochoa was an Account Manager with HCSG at Kaw River. On or about June 9, 2015, Ochoa signed an RCA with HCSG.

(u) Each of the foregoing individuals identified in this paragraph shall hereafter be referred to as the "Contractually Bound Managers."

96. Each of the RCAs between HCSG and the Contractually Bound Managers states:

Employee agrees that at no time during his/her employment with the Company or for a period of two (2) years after his/her employment has terminated, for any

25

reason, will he/she accept any employment related to housekeeping, laundry, linen, and/or food services by any facility in which Employee has worked, or been directly responsible for, with two (2) years of Employee's separation from the Company.

97. Each of the RCAs states that it is intended to protect, among other things, HCSG's proprietary information and trade secrets to which its managers have access. In particular, when signing the RCAs the Contractually Bound Managers:

> acknowledge that [the RCA] is necessary to protect the business and good will of the Company, and that a breach . . . will irreparably and continually damage the Company, for which money damages may not be adequate. Consequently, Employee agrees that, in the event that he/she breaches or threatens to breach any of these covenants, the Company shall be entitled to both (a) a preliminary or a permanent injunction in order to protect the continuation of such harm and (b) money damages insofar as they can be determined.

98. When it ended its business relationship with the Skyline and the Facilities, HCSG offered to continue employing each of the Contractually Bound Managers in positions at facilities owned by other clients of HCSG, but the Contractually Bound Managers declined or failed to accept the offers.

99. During discussions among HCSG, the Facilities, and Skyline representatives regarding the end of the business relationship, HCSG's representatives reminded the Skyline Defendants and Skyline representatives that HCSG's managers, including the Contractually Bound Managers, are bound by the RCAs.

100. The Skyline Defendants and Skyline representatives ignored those reminders and, aware of the RCAs between the Contractually Bound Managers and HCSG, offered the Contractually Bound Managers employment in positions that are substantially similar and, in some cases, identical to, the positions the Contractually Bound Managers held when they were employed with HCSG and in the same facilities where they worked when they were employed with HCSG, in violation of the RCAs.

26

101. Offering employment to the Contractually Bound Managers and requesting that they perform work that is similar to and, in some cases, identical to, the work they performed when they were employed with HCSG in the same facilities where they worked when they were employed with HCSG places the Contractually Bound Managers in direct violation of the RCAs.

102. After the Facilities and Skyline began employing the Contractually Bound Managers, counsel for HCSG sent letters to Skyline and to certain of the Contractually Bound Managers notifying them that the Contractually Bound Managers were in breach of their RCAs by virtue of their employment with Skyline.

103. While violating their RCAs, the Contractually Bound Managers have used, or otherwise misappropriated, valuable trade secrets and confidential or proprietary information for the benefit of the Skyline, resulting in the potential nullification of the valuable trade secrets and confidential or proprietary information developed by and through HCSG by HCSG's investment of substantial amounts of time, effort and money.

### COUNT I
### BREACH OF ORAL CONTRACT
### (Against Skyline and the Facilities)

104. Plaintiff incorporates by reference Paragraphs 1 through 103, above as though set forth fully herein.

105. Following the transfer of operations of the Facilities, HCSG entered into an oral agreement with Skyline to provide the services described in the Services Agreements to the Facilities.

106. Joseph Schwartz, purporting to act on behalf of the Facilities and Skyline, orally agreed to pay HCSG for any and all dining, nutrition, housekeeping and/or laundry services HCSG provided at the Facilities.

27

107. HCSG provided housekeeping, laundry, dining, and/or nutrition services at the Facilities.

108. Skyline and the Facilities have failed to make all required payments to HCSG for the services HCSG provided at the Facilities.

109. As a result of the failure of Skyline and the Facilities to pay HCSG, HCSG has suffered damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of $894,904.09, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT II
## BREACH OF THE PROMISSORY NOTE
### (Against Skyline and Michael Schwartz)

110. Plaintiff incorporates by reference Paragraphs 1 through 109, above as though set forth fully herein.

111. On October 28, 2016, Michael Schwartz, on behalf of Skyline and as personal guarantor, executed the Promissory Note.

112. Skyline failed to make the required February 26, 2017 payment in the amount of $150,000.

113. Pursuant to the Promissory Note, HCSG is entitled to a late fee of $7,500.

114. Pursuant to the Promissory Note, HCSG is entitled to collect interest.

115. Pursuant to the Promissory Note, HCSG is entitled to recover its attorneys' fees related to the collection of funds.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants and enter an order awarding Plaintiff compensatory damages in excess of $157,500,

28

pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems appropriate.

**COUNT III**
**BREACH OF CONTRACT (IN THE ALTERNATIVE)**
**(Against Skyline and the Facilities)**

116.  Plaintiff incorporates by reference Paragraphs 1 through 115, above as though set forth fully herein.

117.  Upon information and belief, Skyline and the Facilities were aware, through due diligence prior to the acquisition of control and/or ownership of each of the Facilities, that HCSG provided services to the Facilities pursuant to the Service Agreements.

118.  Following the transfer of operations, Skyline and the Facilities assumed the Services Agreements, including, without limitation, the obligation to pay HCSG for services provided under the Servicing Agreements.

119.  HCSG provided housekeeping, laundry, dining, and/or nutrition services to the Facilities pursuant to the Services Agreements.

120.  Skyline and the Facilities have failed to make any payments to HCSG for the services HCSG provided to the Facilities.

121.  As a result of the failure by Skyline and the Facilities to pay HCSG, HCSG has suffered damages.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of $894,904.09, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

29

## COUNT IV
## UNJUST ENRICHMENT (IN THE ALTERNATIVE)
### (Against the Skyline Defendants and the Facilities)

122. Plaintiff incorporates by reference Paragraphs 1 through 122, above as though set forth fully herein.

123. HCSG provided housekeeping, laundry, dining, and/or nutrition services to the Facilities.

124. The Skyline Defendants and the Facilities benefited from the services provided by HCSG.

125. The Skyline Defendants and the Facilities did not provide full payment to HCSG for its services.

126. It would be unjust and unconscionable for Defendants to retain those benefits without fairly compensating HCSG.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants and enter an order awarding Plaintiff compensatory damages in excess of $894,904.09, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT V
## PROMISSORY ESTOPPEL
### (Against Joseph Schwartz, Michael Schwartz, and Louis Schwartz)

127. Plaintiff incorporates by reference Paragraphs 1 through 126, above as though set forth fully herein.

128. To induce HCSG to continue providing housekeeping, laundry, dining, and/or nutrition services at the Facilities, Joseph Schwartz, Michael Schwartz, and Louis Schwartz made multiple representations that HCSG would be compensated for these services.

129. In reliance of these representations, HCSG continued performing these services.

130. HCSG relied on these representations to its detriment.

30

131. Specifically, HCSG has not been paid for the services provided at the Facilities.

132. The Skyline Defendants and the Facilities failed to make any payments to HCSG for HCSG's services.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants and enter an order awarding Plaintiff compensatory damages in excess of $894,904.09, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT VI
## BREACH OF CONTRACT
## (Against Joseph Schwartz, Michael Schwartz, and Louis Schwartz)

133. Plaintiff incorporates by reference Paragraphs 1 through 132, above as though set forth fully herein.

134. Each of Joseph Schwartz, Michael Schwartz, and Louis Schwartz on multiple occasions unequivocally represented, warranted, and stated that they would guarantee the payments by Skyline to HCSG.

135. For example, each of Joseph Schwartz, Michael Schwartz, and Louis Schwartz were advised by HCSG that HCSG was considering ceasing providing services to Skyline as a result of Skyline's failure and/or inability to pay HCSG.

136. Each of Joseph Schwartz, Michael Schwartz, and Louis Schwartz responded by stating that they would guarantee the payments owed by Skyline to HCSG.

137. Notwithstanding the agreement of Joseph Schwartz, Michael Schwartz, and Louis Schwartz to guarantee the payments owed by Skyline HCSG, Skyline, Joseph Schwartz, Michael Schwartz, and Louis Schwartz have not paid to HCSG the amounts owed by Skyline.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and against Defendants and enter an order awarding Plaintiff compensatory damages, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

31

## COUNT VII
## BREACH OF THE RCAS
### (Against the Contractually Bound Managers)

138. Plaintiff incorporates by reference Paragraphs 1 through 137, above as though set forth fully herein.

139. Plaintiff entered into RCAs with each of the Contractually Bound Managers.

140. When it ended its business relationship with Skyline and the Facilities, HCSG offered to continue employing each of the Contractually Bound Managers in positions at facilities owned by other clients of HCSG, but the Contractually Bound Managers declined or failed to accept the offers.

141. Each of the Contractually Bound Managers accepted employment with the Facilities and/or Skyline in direct contravention of the RCA.

142. As a result of the actions of the Contractually Bound Managers, HCSG has suffered damages.

143. WHEREFORE, the Court should enter judgment in favor of HCSG and against the Contractually Bound Managers and enter an order:

    (a) compelling the Contractually Bound Managers to comply with the RCAs; and

    (b) such other relief as the Court deems appropriate.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS
### (Against Skyline and the Facilities)

144. Plaintiff incorporates by reference Paragraphs 1 through 143, above as though set forth fully herein.

145. Skyline and the Facilities interfered with HCSG's business and contractual relationships with the Contractually Bound Managers by causing the breach of contractual

32

obligations owed by the Contractually Bound Managers to HCSG, and by using trade secrets and/or confidential and proprietary business information gained as a result of that interference for its own benefit.

146. Skyline and the Facilities had knowledge, obtained from HCSG, that HCSG maintained and/or continues to maintain ongoing contractual and/or business relations with the Contractually Bound Managers, which afford HCSG actual and/or prospective contractual and/or legal rights with which the Skyline and the Facilities have knowingly interfered.

147. The interference with HCSG's actual and/or prospective legal and/or contractual rights by Skyline and the Facilities has been intentional and without privilege or justification.

148. Skyline and the Facilities' conduct is improper in that it intentionally and knowingly interfered with HCSG's contractual relationships with the Contractually Bound Managers with the intent of injuring HCSG and/or benefiting from HCSG's proprietary and confidential information without paying for HCSG's services.

149. As a consequence of the foregoing, HCSG has suffered and will continue to suffer significant harm and loss.

WHEREFORE, the Court should enter judgment in favor of HCSG and against the Skyline and the Facilities and enter an order:

A. compelling Skyline and the Facilities to forfeit to HCSG all profits, commissions, or other monetary benefits from its unlawful interference with HCSG's business operations;

B. preliminarily and permanently enjoining Skyline and the Facilities from employing the Contractually Bound Managers in violation of their RCAs with HCSG; and

C. such other relief as the Court deems appropriate.

SL1 1468777v2 104212.00364

## COUNT IX
## REQUEST FOR INJUNCTIVE RELIEF
### (Against Skyline and the Facilities)

150. Plaintiff incorporates by reference Paragraphs 1 through 149, above as though set forth fully herein.

151. Skyline and the Facilities' continued employment of the Contractually Bound Managers in violation of their RCAs will cause irreparable injury to HCSG.

152. By virtue of the foregoing, HCSG has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Skyline and the Faculties.

153. Unless Skyline the Facilities are temporarily, preliminarily, and permanently enjoined from the foregoing conduct, HCSG will continue to be irreparably harmed by their conduct.

154. HCSG has no adequate remedy at law.

WHEREFORE, HCSG respectfully requests that Skyline and the Facilities be enjoined from employing the Contractually Bound Managers in violation of their RCAs.


## JURY TRIAL DEMANDED

Plaintiff HCSG hereby demands a trial by jury on all issues so triable.

SL1 1468777v2 104212.00364

**STEVENS & LEE, P.C.**

Dated:   June 14, 2017

By:

Joseph E. Wolfson
620 Freedom Business Center, Suite 200
King of Prussia, Pennsylvania 19406
(610) 205-6019
jwo@stevenslee.com

Elizabeth A. Ware
111 N. Sixth Street
Reading, PA 19603
610-478-2210
eaw@stevenslee.com

*Attorneys for Plaintiff*

SL1 1468777v2 104212.00364