IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEALTHCARE SERVICES GROUP, INC.,

Plaintiff,

v.

SKYLINE SERVICES GROUP, LLC., et al.,

Defendants.

CIVIL ACTION
NO. 17-2703

## OPINION

**Slomsky, J.**                                                        **August 6, 2020**

## I.      INTRODUCTION

Before the Court is Defendant Joseph Schwartz's Motion for an Order Vacating a Default Judgment Pursuant to Fed. R. Civ. P. 60(b).  (Doc. No. 93.)  On March 11, 2020, Defendant Schwartz[1] filed the instant Motion seeking to have the Default Judgment (Doc. No. 90) entered in favor of Plaintiff Healthcare Services Group, Inc. vacated.  On March 25, 2020, Plaintiff filed a Response in Opposition.  (Doc. No. 94.)  For reasons that follow, the Court will deny Defendant Schwartz's Motion.

## II.     BACKGROUND

On July 2, 2019, the Court issued a footnote order granting the Motion for a Default Judgment. (Doc. No. 90.)  In the footnote, the Court described in detail the failure of individual Defendants Joseph Schwartz, Michael Schwartz, and Louis Schwartz, and the other Defendants to comply with court orders and discovery requests, and to cooperate with their own counsel.  The

---

[1]    Whenever "Defendant Schwartz" is referred to in this Opinion, the Court is referring to Joseph Schwartz who filed the Motion.

Complaint was originally filed on June 15, 2017, and the Default Judgment was entered on July 2,

2019.  For over two years, the Court attempted to manage this case expeditiously and fairly and

afforded Defendants several opportunities to appear in court to explain the reason for their conduct,

which was obstructive to the advancement of this litigation.  This was all to no avail.  Therefore,

in view of the motion filed by Defendant Schwartz, it bears repeating here at length the facts the

Court relied upon in granting the Default Judgment as set forth in the footnote Order:

> On June 15, 2017, Plaintiff Healthcare Services Group, Inc. ("Plaintiff" or
> "HCSG"), initiated this case against Defendant Skyline Services Group, LLC
> ("Skyline"), Skyline's principals, Joseph Schwartz [("Defendant Schwartz")],
> Michael Schwartz, and Louis Schwartz ([collectively,] the "Schwartz
> Defendants") ([and] collectively with Skyline, [the] "Skyline Defendants"), and
> the long-term care facilities under Skyline's ownership and/or control (the
> "Skyline Facilities") (collectively, "Defendants"), to collect outstanding debts
> owed to HCSG as a result of services it provided to the Skyline Facilities.  (Doc.
> No. 1.)  Plaintiff alleged claims for breach of oral contract against Skyline and the
> Skyline Facilities (Count I), breach of promissory note against Skyline and
> Michael Schwartz (Count II), breach of contract in the alternative against Skyline
> and the Skyline Facilities (Count III), unjust enrichment in the alternative against
> the Skyline Defendants and Skyline Facilities (Count IV), promissory estoppel
> against the Schwartz Defendants (Count V), breach of contract against the
> Schwartz Defendants (Count VI), breach of restrictive covenant agreements
> ("RCAs") against the facility managers who signed RCAs with HCSG (the
> "contractually-bound managers") (Count VII), tortious interference with
> contractual relationships against Skyline and the Skyline Facilities (Count VIII),
> and made a request for injunctive relief against Skyline and the Skyline Facilities
> (Count IX).  (Doc. No. 1.)  On November 3, 2017, Defendants filed an Answer to
> the Complaint.  (Doc. No. 30.)
>
> On May 10, 2018, Defendants' counsel, William Whitman, Esquire, filed a Motion
> to Withdraw, citing as the reason Defendants' failure "to fulfill their obligations .
> . . regarding counsel's services."  (Doc. No. 41 at 2.)  On May 22, 2018, the Court
> entered an Order scheduling a hearing on the Motion to Withdraw for June 8, 2018.
> (Doc. No. 46.)  In the Order, the Court required that the Schwartz Defendants be
> present at the hearing.  (Doc. No. 46.)  The Court also required Mr. Whitman to
> serve a copy of the Order on the Schwartz Defendants and file proof of service of
> record.  On June 8, 2018, the Schwartz Defendants failed to appear, but upon
> learning that Mr. Whitman had not served the Order on the Schwartz Defendants
> as required, the Court continued the hearing for June 20, 2018.  (Doc. No. 51.)  In
> the Order continuing the hearing, the Court again required the Schwartz
> Defendants to appear and Mr. Whitman to serve the Schwartz Defendants with a

copy of the Order and file proof of service of record.  (Doc. No. 51.)  On June 20, 2018, Mr. Whitman filed a declaration certifying that he had served the Schwartz Defendants with the Order by First Class Mail and Certified Mail.  (Doc. No. 52.)  On June 20, 2018, the Schwartz Defendants failed to appear for the hearing and the Court granted Mr. Whitman's Motion to Withdraw.  (Doc. No. 53.)

On July 12, 2018, Kevin J. O'Connor, Esquire, a partner of the law firm Peckar & Abramson, P.C., entered his appearance on behalf of Defendants.  (Doc. No. 56.)  Roughly six months later, on January 18, 2019, Mr. O'Connor filed a Motion to Withdraw.  (Doc. No. 65.)  The Court scheduled a hearing on the Motion to Withdraw for January 31, 2019.  (Doc. No. 66.)  In the Order scheduling the hearing, the Court required the Schwartz Defendants to appear on January 31, 2019, and ordered Mr. O'Connor to serve a copy of the Order on the Schwartz Defendants and file proof of service of record.  (Doc. No. 66.)  He did so.  (Doc. No. 69.)  On January 31, 2019, the Schwartz Defendants failed to appear for the hearing and the Court granted Mr. O'Connor's Motion to Withdraw.  (Doc. No. 71.)

On January 31, 2019, the Court entered an Order scheduling a status hearing in this case for February 14, 2019.  (Doc. No. 72.)  In the Order, the Court required the Schwartz Defendants and "[a]ny counsel representing the corporate Defendants, or any principal or agent of the corporate Defendants" be present at the hearing.  (Id.)  The Order scheduling the February 14, 2019 hearing was served on all Defendants by U.S. Mail at the addresses provided by their former counsel and noted on the docket.  (Id.)  On February 14, 2019, only counsel for Plaintiff was present at the status hearing.  The Schwartz Defendants did not appear, nor did any counsel, principal or agent of Skyline or the Skyline Facilities appear.

In addition to Defendants' failures to appear in court as ordered, Plaintiff submits that Defendants have obstructed the progress of this case in another way: Defendants have shirked their obligations to actively engage in discovery.  (Doc. No. 78 at 5-6.)  Plaintiff served Defendants with written discovery requests on May 11, 2018 and served Defendants with deposition notices on January 2, 2019.  (Id. at 5.)  To date, the Skyline Defendants have not responded to Plaintiff's discovery requests or deposition notices. (Id.)

Because of Defendants' refusal to participate in this case, Plaintiff filed a Motion for Default Judgment on March 4, 2019.  (Doc. No. 77.)  In the [m]otion, Plaintiff request[ed] that default judgment be entered against Defendants as a sanction pursuant to Federal Rules of Civil Procedure 16(f), 37, and 55.  (Id.; Doc. No. 78 at 6.)  Plaintiff also request[ed] as part of the sanction an award of pre-judgment interest, post-judgment interest, and attorneys' fees.  (Doc. No. 77.)  [Plaintiff also filed as an exhibit to its motion a sworn affidavit from Jim O'Toole, Plaintiff's Financial Services Manager.  (Doc. No. 78-3.)  In the affidavit, Mr. O'Toole details the specific amounts owed to Plaintiff under a promissory note executed between Plaintiff and Michael Schwartz on October 18, 2016, and for services

3

rendered at the Skyline Facilities. (Id.) Plaintiff requested that if the Court chooses to rely on Mr. O'Toole's affidavit to prove damages instead of holding an evidentiary hearing, that the Court dismiss Plaintiff's claims against thirty-two of the Skyline Facilities (the "Dismissed Facilities"). (Doc. No. 90 at 12-13.)] Defendants [did] not responded to the [m]otion.

On June 13, 2016, the Court entered an Order scheduling a hearing on the Motion for Default Judgment for June 24, 2019. (Doc. No. 83.) The Court required Plaintiff to serve a copy of the Order on all Defendants and file proof of service of record, which Plaintiff did on June 17, 2019. (Doc. No. 84.) On June 24, 2019, the Court held a hearing on the Motion for Default Judgment. At the hearing, counsel for Plaintiff was present, but Defendants did not appear.

\* \* \*

### B. Plaintiff is Entitled to Compensation

In the Motion for Default Judgment, Plaintiff seeks compensatory damages in the amount of $862,989.80. (Doc. No. 77.) In support of its compensatory damages, Plaintiff has submitted the sworn-affidavit of Jim O'Toole, HCSG's Financial Services Manager. (Id.)

Mr. O'Toole's affidavit sets forth the specific amounts owed to Plaintiff pursuant to a promissory note executed between Plaintiff and Michael Schwartz on October 18, 2016. (Id. at 1-3, Ex. 1 to Ex. C.) According to the affidavit, Plaintiff is owed to $157,000 on the promissory note: $150,000 for the outstanding last payment and a $7,500 late fee. (Id.)

The affidavit then sets forth the amounts owed to Plaintiff by the Skyline Facilities. For the services rendered at the Skyline Facilities that were parties to the promissory note located in Arkansas, Florida, and Massachusetts, Plaintiff is owed $368,522.27 pursuant to contracts attached to the affidavit at Exhibits 2 through 5. (Id. at 3-5; Exs. 2-5 to Ex. C.) For the services rendered at the Skyline Facilities located in Kansas, Plaintiff is owed $239,321.35 pursuant to contracts attached to the affidavit at Exhibit 6. (Id. at 6-10; Ex. 6 to Ex. C.) For services rendered at the Skyline Facilities located in South Dakota, Plaintiff is owed $97,646.18 pursuant to a contract which is attached the affidavit at Exhibit 7. (Id. at 10-14; Ex. 7 to Ex. C.) In total, Plaintiff is owed $705,489.80 for unpaid services it provided at the Skyline Facilities located in Arkansas, Florida, Massachusetts, Kansas, and South Dakota.

The amount owed to Plaintiff from the services rendered at the Skyline Facilities, together with the $157,000 owed to Plaintiff on the promissory note, totals $862,489.80. Although Plaintiff is seeking $862,989.80 in compensatory damages, the Court finds that Plaintiff has made a calculation error in the amount due for the

services at the Skyline Facilities and under the promissory note. Plaintiff's compensatory damages are $862,489.80, not $862,989.90.

\* \* \*

### D. Plaintiff is Entitled to Attorney's Fees

In addition to compensatory damages, Plaintiff requests attorney's fees and costs pursuant to its several contracts with Defendants. (Doc. Nos. 77, 87.) "Where there is an agreement which provides a remedy for reasonable collection costs, the right to costs and attorney's fees arises from a favorable default verdict." Wells Fargo Fin. Leasing, Inc. v. Target Ad, Inc., No. 09-340, 2010 WL 1141332, at \*2 (E.D. Pa. Mar. 24, 2010) (citing De Lage Landen Financial Services, Inc. v. Rozentsvit, 939 A.2d 915 (Pa. Super. Ct. 2007)). In this case, each of Plaintiff's contracts with Defendants provide for attorney's fees and costs.

First, with respect to the promissory note executed between Plaintiff and Michael Schwartz, the note states that in the event of a breach, Skyline "shall pay all costs and expenses including, without limitation, all reasonable attorneys' fees and disbursements and all court costs" incurred by Plaintiff. (Doc. No. 78, Ex. 1 to Ex. C, § 12.) Plaintiff's contracts for the Skyline Facilities located in Arkansas, Florida, and Massachusetts each contain provisions entitling Plaintiff to attorney's fees and costs in the event of a breach. (Id. at Ex. 2 to Ex. C, at App. 17, 30, 40, 52, 62, 71, 80.) Plaintiff's contracts for the Skyline Facilities in Kansas also entitle Plaintiff to attorney's fees and costs. (Id. at Ex. 6 to Ex. C, at App. 182, 193, 204, 215, 226, 237, 248, 270, 292, 303, 314, 325, 336, 380.) Likewise, Plaintiff's contracts for the Skyline Facilities in South Dakota allow Plaintiff to recover attorney's fees and costs that result from a breach. (See id. at Ex. 7 to Ex. C, at § 7.2A.)

In entering default judgment, this Court accepts as true Plaintiff's allegations that Defendants breached their contracts with HCSG. Corbin, 908 F.2d at 1149. Because Plaintiff's contracts with the Skyline Defendants and the Skyline Facilities allow Plaintiff to recover attorney's fees and costs in the event of a breach, the Court will award Plaintiff attorney's fees and costs. Attorney's fees and costs are also being awarded as a sanction pursuant to Rules of Civil Procedure noted above.

Plaintiff submits that $125,474.30 in attorney's fees and $10,590.33 in costs have been billed to HCSG on this case. (Doc. No. 87.) To support these fees and costs, Plaintiff has submitted a sworn-affidavit of its counsel, Elizabeth A. Ware, Esquire, of the firm Stevens & Lee, P.C. (Id.) The affidavit sets forth the attorney's fees charged to Plaintiff for each task counsel had to complete in this case. The affidavit also lists the time spent by each Stevens & Lee attorney, paralegal, and assistant who worked on this case, and the rate they each charged for their time. Based on Ms. Ware's affidavit, the Court finds that the fees and costs requested by Plaintiff are reasonable. As such, in addition to compensatory damages, the Court will award Plaintiff $132,921.23 in attorney's fees and costs.

**E. Plaintiff is Entitled to Pre- and Post-Judgment Interest**

Finally, Plaintiff requests that it be awarded pre-judgment and post-judgment interest calculated at the legal rate of interest in Pennsylvania of six percent per year. (Doc. No. 87 at 2.) In diversity cases such as this one, "the question of whether to award prejudgment interest is one of state law." Lexington Ins. Co. v. Abington Co., 621 F. Supp. 18, 19 n.3 (E.D. Pa. 1985). In Pennsylvania, a plaintiff is entitled to pre-judgment interest if "a defendant commits a breach of a contract to pay a definite sum of money . . . ." Vanalt Elec. Const., Inc. v. Selco Mfg. Corp., No. 03-6741, 2005 WL 3447632, at *1-2 (E.D. Pa. Dec. 15, 2005) (citing Black Gold Coal Corp. v. Shawville Coal Co., 730 F.2d 941, 944 (3d Cir. 1984)).

In this case, Plaintiff is entitled to pre-judgment interest because the amounts owed to Plaintiff for Defendants' breaches are clearly ascertainable from the contracts executed between the parties. At an interest rate of six-percent per year, the pre-judgment interest on Plaintiff's compensatory damages of $862,989.80 is $51,779.39 per year, or $141.86 per day. Plaintiff initiated this case on June 15, 2017, 747 days ago. (Doc. No. 1.) Accordingly, Plaintiff is entitled to pre-judgment interest in the amount of $105,969.42.

Plaintiff is also entitled to an award of post-judgment interest pursuant to 28 U.S.C. § 1961(a). Section 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and, further, that the "interest shall be calculated from the date of the entry of the judgment . . . ." Accordingly, the Court also will award Plaintiff post-judgment interest.

(Doc. No. 90.)

Nearly eight months after the Default Judgment was entered against Joseph Schwartz, Michael Schwartz, Louis Schwartz, Skyline Services Group, LLC, and the named facilities, Defendant Schwartz filed the instant Motion for an Order Vacating the Default Judgment Pursuant to Federal Rule of Civil Procedure 60(b). (Doc. No. 93.) In his Motion, Defendant Schwartz asks the Court to vacate the Default Judgment entered against him, the other Schwartz Defendants, Skyline, and the long-term care facilities found liable in the Judgment. (Doc. No. 91.) He contends that the parties' failure to defend or otherwise engage in the litigation was due to excusable neglect. (See Doc. No. 93 at 3-5.) He also asserts that the Default Judgment was not the result of culpable misconduct because the "defendants have in fact participated throughout much of the pendency of

this action," including settlement negotiations and defending against Plaintiff's claims. (<u>Id.</u>)

Moreover, Defendant Schwartz alleges that his "conduct does not rise to the level of willfulness, or bad faith, but rather constitutes mere neglect during the times defendants were unrepresented by counsel." (<u>Id.</u> at 11.)   To support this assertion, he claims that the Skyline Defendants "participat[ed] in the action while they were represented by counsel," attempted to retain counsel for the default hearing before this Court and were denied the opportunity to "participate in the default hearing telephonically." (<u>Id.</u>)

In addition, Defendant Schwartz states that if the Default Judgment were vacated, the Skyline Defendants would have a meritorious defense to Plaintiff's claims.  He does not elaborate on what the defense would be, aside from the bare assertion that "defendants deny that there is any personal liability attributed to individual defendants Joseph Schwartz, Louis Schwartz, and Michael Schwartz, for those claims against the entity defendants, Skyline, the Facilities, or the 23 Employees." (<u>Id.</u> at 9.)  He further denies that Skyline is responsible for the debts of the facilities and claims that "[i]f [the Defendants'] assertions are proven, they would have a defense to plaintiff's claims, at least for purposes of opening the [D]efault [J]udgment." (<u>Id.</u>)   He also contends that Plaintiff will not suffer any prejudice if the Default Judgment is vacated because Plaintiff "failed to even allege any prejudice that would materially impair [their] ability to pursue [their] claims on the merits." (<u>Id.</u> at 10.)

On March 25, 2020, Plaintiff filed a Response in Opposition to Defendant's Motion to Vacate. (Doc. No. 94.)  In the Response, Plaintiff argues that Defendant Schwartz's Motion should be denied because "there is no 'excusable neglect' to warrant relief under Rule 60(b)." (<u>Id.</u> at 1.)  Disagreeing with Defendant Schwartz's description of the Defendant's efforts to engage in the litigation, Plaintiff describes their conduct as "practically . . .  the textbook definition of 'culpable

conduct.'" (<u>Id.</u> at 11.)  To support this assertion, Plaintiff notes that Defendants failed to engage in discovery, failed to participate in depositions, and "refus[ed] to cooperate with their former counsel." (<u>Id.</u>; Doc. 90, n.1.)

Plaintiff also challenges the assertion that the Skyline Defendants have a meritorious defense to the claims because their Motion to Vacate fails to "assert any factual allegations that give rise to a meritorious defense" and instead "merely offers vague and insufficient general denials of [Plaintiff's] claims." (Doc. No. 94 at 10, 13.)  Plaintiff submits that the "blanket denials are insufficient to set aside a default judgment." (<u>Id.</u> at 10.)  Lastly, Plaintiff reasons that setting aside the Default Judgment would unduly prejudice their ability to resolve their claims against Defendant Schwartz and the other Defendants.  (<u>Id.</u> at 12.)  According to Plaintiff, "[n]otably absent from Schwartz's present motion is any indication or assurances that the Skyline Defendants' behavior towards [Plaintiff] or the Court would change if this case was re-opened." (<u>Id.</u> at 13.) Plaintiff cites concerns that Defendants will continue to "stonewall[] and ignore[]" requests from Plaintiff and orders from the Court, "in the hope of ultimately evading responsibility for their actions." (<u>Id.</u>)

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).  Federal Rule of Civil Procedure 60(b) governs a party's ability to seek relief from a judgment or order.  It states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:
>
>     (1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) Any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Generally, a default judgment is disfavored because it has the effect of preventing a case from being decided on the merits. E. Elec. Corp. of New Jersey v. Shoemaker Const. Co., 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009). And while the Third Circuit has expressed a preference against entry of a default judgment, it has also cautioned trial courts to "weigh the equities of the situation and the need for the efficacious resolution of controversies." Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982). No rigid formula or per se rule applies when a court weighs the equities. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

Although Defendant Schwartz moves under Rule 60(b) generally, in substance, he argues in his Motion that the Default Judgment should be vacated for excusable neglect under Rule 60(b)(1).[2] "Rule 60(b)(1) permits a district court to grant relief from a final judgment based upon excusable neglect." Perry v. Commonwealth, 328 Fed. App'x 785, 787 (3d Cir. 2009). In determining whether to set aside a default under Rule 60(b)(1), the Third Circuit directs a district court to consider whether (1) the defendant has a meritorious defense, (2) the plaintiff will be

---

[2]   This conclusion is reached because Defendant Schwartz only discusses the legal standard for a motion filed pursuant to Rule 60(b)(1) and only applies the facts of this case to that standard. And under Rule 60(b)(1), mistake, inadvertence, or surprise do not apply here.

prejudiced, and (3) the default was the result of the defendant's culpable conduct.  United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).  A district court has wide discretion in this analysis and must weigh the totality of the circumstances in determining whether to vacate a default judgment.  Perry, 328 Fed. App'x at 787; Dee Paper Co. v. Loos, No. 15-1513, 2015 U.S. Dist. LEXIS 124114, at *6-7 (E.D. Pa. Sept. 17, 2015) (citing Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988)).

## IV.   ANALYSIS

Defendant Schwartz's Motion will be denied because he cannot show that he or the Skyline Defendants have a meritorious defense; that Plaintiff will not be prejudiced; and that the Default was not the result of his and the other Skyline Defendants' culpable conduct.  Each of these conclusions will be discussed in turn below.[3]

### A.  Meritorious Defense

First, Defendant Schwartz has not proffered a sufficient meritorious defense to warrant relief from the Default Judgment.  Whether a defendant has a meritorious defense is usually considered the threshold issue in determining if a default judgment should be vacated.  Hritz, 732 F.2d at 1181.  The standard for showing a meritorious defense is stringent; it requires a defendant

---

[3]   In addition to the three enumerated factors noted above, the Third Circuit requires a district court to "determine whether any sanction short of a default judgment would be ineffective." Hritz, 732 F.2d at 1182; see also Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987). Plaintiff argues, and this Court agrees, that Defendants have not shown any intention of pursuing this case to a decision on the merits.  Defendants repeated conduct over two years of disregarding orders to appear before the Court, not participating in discovery, and not cooperating with their counsel, does not inspire confidence that their behavior would change if the case were reopened or a lesser sanction levied.  Granting the instant Motion will only afford Defendants the opportunity to renew their obstructive conduct.  The Motion was filed by Defendants' first counsel who had been granted leave to withdraw his appearance after several hearings at which Defendants failed to appear.  There is no assurance that the same situation and obstructive conduct by Defendants will not arise again in this case.

to set forth with specificity the grounds for their defense.  <u>Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.</u>, 175 Fed. App'x 519, 522 (3d Cir. 2006).  "Defendants do not have the right to have a default judgment set aside automatically upon alleging a defense." <u>Id.</u>  Once a defense is alleged, the court must look at the substance of that defense to determine whether, if established at trial, it would constitute a complete defense to the action.  <u>Id.</u>

To meet its burden of proving a meritorious defense, Defendant must produce more than facially valid statements; instead, its proffer must be substantively sufficient.  <u>See</u> <u>Harad</u>, 839 F.2d at 982; <u>Rios v. Marv Loves 1</u>, No. 13-1619, 2015 U.S. Dist. LEXIS 116758, at *14 (E.D. Pa. Sept 2, 2015).  For example, in <u>Rios</u>, the district court denied a defendant's motion to vacate an entry of default under Rule 60(b)(1) because the defendant offered no specific facts beyond general denials and conclusory allegations that it had a meritorious defense.  2015 U.S. Dist. LEXIS 116758, at *14.  In that case, the defendant's memorandum of law only contained general denials, including, among other things, an assertion that witnesses would testify that the plaintiff's claim was baseless.  <u>Id.</u> at *13.  The court held that without any specific facts (<u>e.g.</u>, a proposed Answer, exhibits or evidence), the proffered defenses were merely general denials and therefore insufficient.  <u>Id.</u> at *15.

In this case, Defendant Schwartz has offered no more than conclusory statements and denials of his and the other Skyline Defendants' liability.  (<u>See</u> Doc. No. 93 at 9).  His Motion merely states that "defendants deny that there is any personal liability" and denies that he is "responsible for the debts of" the Skyline facilities.  (<u>See</u> Doc. No. 93.)  He offers no evidence or specific grounds supporting these statements.  (<u>See</u> <u>id.</u>)  Without supporting evidence, these statements are only simple denials and are tantamount to legal conclusions.  Thus, Defendant has failed to establish a meritorious defense to any of the claims which would "constitute a complete

defense to the action," and the Court finds that this "threshold issue" weighs against vacating the Default Judgment.

### B. Prejudice to Plaintiff

Second, vacating the Default Judgment in this case would be prejudicial to Plaintiff. Although a mere "[d]elay in realizing satisfaction on a claim rarely serves to establish a sufficient degree of prejudice," examples of factors that may establish prejudice include "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment" that hinder a "plaintiff's ability to pursue the claim." Starlight Ballroom Dance Club, Inc., 175 Fed App'x at 523-24 (quoting Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656-57 (3d Cir. 1982)); see also Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (finding prejudice where "defendant encountered lack of cooperation from a plaintiff in areas where the plaintiff should cooperate under the spirit of the federal procedural rules."). In addition, requiring a plaintiff to re-litigate a matter after expending considerable resources and after obtaining a default judgment can also establish prejudice. See Umansky v. Melton Int'l Tackle, Inc., No. 17-4712, 2019 U.S. Dist. LEXIS 183256, at * 18 (concluding that "[t]o re-open this case and require Plaintiff to re-litigate the matter would constitute a severe burden on Plaintiff . . .").

Plaintiff offered the following statement in its Response on how it would be prejudiced should the Default Judgment be reopened.

> [Plaintiff] initiated this lawsuit well over two-and-a-half years ago. In that time, it has been stonewalled and ignored at every turn by the Skyline Defendants. Notably absent from Schwartz's present motion is any indication or assurances that the Skyline Defendants' behavior towards [Plaintiff] or the Court would change if this case was re-opened. It is also indicative of Schwartz and the Skyline Defendants' continued turbulent relationship with counsel that it took nearly seven months from Attorney Whitman's letter to the Court indicating that he was reviewing the case and planning to file a motion to vacate to actually filing the instant Motion. [Plaintiff] and the Court would likely only be subjected to further disrespect and consternation if [Plaintiff] tried to procure the same discovery it has sought since

> May 2018. The Skyline Defendants clearly have no interest in deciding this case on the merits, as evidenced by their complete lack of defense to [Plaintiff's] claims, and will continue to waste the time and resources of [Plaintiff] and the Court in the hope of ultimately evading responsibility for their actions.

(Doc. No. 94 at 13 (internal citations omitted.))

Here, although Plaintiff's Response did not raise any concern that there is the potential for loss of evidence or fraud if this Court were to vacate the Default Judgment, it is clear that Plaintiff has expended significant time and resources in pursuing this case, and has experienced an intentional lack of cooperation during the nearly two years before the Default was entered.  To re-open this case and require Plaintiff to continue litigating would only add to its substantial burden.  Moreover, based on Joseph Schwartz, Michael Schwartz, and Louis Schwartz's purposeful lack of cooperation throughout the litigation, as well as the over seven month hiatus from the entering of the Default Judgment to the filing of Defendant Schwartz's Motion to Vacate, the Court is persuaded that his conduct is "not in the spirit of the federal procedural rules."  Poulis, 747 F.2d at 868.  Defendants have flouted these rules for over two years. Therefore, Plaintiff should not be put through the unjust burden of relitigating this case.  Vacating the Default Judgment would be prejudicial to Plaintiff.

### C.  Culpable Conduct

Third, the Default Judgment was the result of the culpable conduct of Defendant Schwartz and the other Defendants.  The Third Circuit defines culpable conduct as "the willfulness or bad faith of a defendant."  Hritz, 732 F.2d at 1182.  For a district court to find that the default judgment resulted from a defendant's culpable conduct, "more than mere negligence must be demonstrated."  Id. at 1183.  Furthermore, "[a]cts intentionally designed to avoid compliance with court notices" as well as "[r]eckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard."  Id.  In the alternative, lack of culpability may be found

when the defendant's conduct "involve[s] innocent mishaps or mere mistakes."  See Starlight

Ballroom Dance Club, Inc., 175 Fed. App'x at 523.

Here, the Default Judgment stems from Defendant Schwartz's culpable conduct because

he, as well as the other Skyline Defendants, have repeatedly disregarded this Court's orders to

appear for hearings.  In fact, Joseph Schwartz, Michael Schwartz, and Louis Schwartz have failed

to appear before this Court as ordered on four separate occasions.  (See generally Doc. No. 53, 71,

72, 90.)  Additionally, Plaintiff notes that Joseph Schwartz, Michael Schwartz, Louis Schwartz,

and the other Skyline Defendants have even failed to participate in discovery.  (Doc. Nos. 78 at 5-

6.)  On four separate occasions, Plaintiff served written discovery requests but never received a

response.  (Id.)  Further, Plaintiff served Defendant Schwartz and the other Skyline Defendants

with a deposition notice on January 2, 2019, which also went unheeded.  (Doc. No. 78-1.)

Moreover, Joseph Schwartz and the other Skyline Defendants repeatedly refused to

cooperate with their own counsel or "to fulfill their obligations . . . regarding counsel's services."

(Doc. No. 41 at 2.)  Twice, their counsel moved to withdrawal. (Doc. Nos. 41, 65.)  Twice, the

Court granted their motions to withdraw at hearings which Joseph Schwartz, Michael Schwartz,

and Louis Schwartz were required to attend but did not do so, despite living in the New York City

metropolitan area, which is easily commutable to Philadelphia, Pennsylvania by car or public

transportation.  (Doc. Nos. 51, 66.)  The Court received no communication at all from them through

the date that the Default Judgement was entered.  If they had any problem with appearing, a

communication notifying the Court was warranted but no such notification was ever made.

Instead, they ignored orders to appear.  Accordingly, Defendant Schwartz and the other Skyline

Defendants' actions cannot be described as merely negligent.  Their actions established beyond

peradventure their intentional avoidance of complying with court orders.

In addition, Defendant Schwartz's assertion that he was not provided with ample opportunity and accommodation to participate in the litigation has no basis on this record. Twice, the Court admitted different counsel for Defendants <u>pro</u> <u>hac</u> <u>vice</u> to facilitate the litigation of this case. (Doc. No. 58; Doc. No. 63.)   And his assertion that Defendants were denied the opportunity to participate in the Default hearing telephonically has no merit because no such request was made. (<u>See</u> Doc. No. 88.)   In actuality, seventy-one notices were sent by first-class mail to Defendant facilities, and to Defendant Schwartz, Michael Schwartz, and Louis Schwartz, at their home addresses and presumably their place of business, notifying them of the date and time of the Default Judgment hearing. (<u>Id.</u> at 16.)   They refused to appear.

On the day of the Default Judgment hearing, the Court received a telephone call from a lawyer who was not a member of the Bar of this Court or licensed to practice law in any jurisdiction. (<u>Id.</u>)   She said she was employed by a firm that was general counsel to Skyline Services Group, LLC. (<u>Id.</u>; Doc. No. 89.)   The Court permitted her to speak over the telephone at the Default Judgment hearing.   She stated she was "relatively new to the firm" and that "[i]t was kind of a graceful gift of God" that she had learned about the hearing when she checked the docket the Friday evening before the Default Judgment hearing. (Doc. No. 88 at 7, 12.)   She also said that she was able to contact one or more of the Defendants on the Sunday before the hearing, informing them that the hearing was scheduled for the next day at 10:30 a.m.   (<u>See</u> <u>id.</u> at 8.)   Although the lawyer conceded that her firm was aware of the Motion for Default Judgment, she wrote in a letter to the Court that the Defendants had no notice of the hearing. (<u>See</u> <u>id.</u> at 12; Doc. No. 86.)   She also said that "[w]hat we really honestly did not receive until effectively yesterday was the order for this hearing." (Doc. No. 88 at 12.)

The Court is skeptical of the claim that Defendants did not receive notice of the Default Judgment hearing because of the extreme unlikelihood that three separate individuals, each of whom were mailed notices at addresses provided by their former counsel (Doc. No. 52) did not receive notice of the hearing, and because this information was sourced from the Schwartz Defendants, whose credibility was already in question due to their conduct throughout the case.

Although the lawyer learned of the hearing on Friday June 21, 2019, no one from her firm ever entered their appearance in the case, and it was not until over seven months later that Defendants' first counsel reappeared and filed the Motion to Vacate the Default Judgment. If Defendants were so invested in this case and concerned about the Default Judgment, they would not have waited over seven months to file the Motion to Vacate. This conduct is consistent with their dilatoriness throughout the litigation and leads to the conclusion that if the Default Judgment were set aside, they would again resort to delay tactics. Furthermore, while the lawyer was not a member of the Bar of this Court, she was permitted to state her request for a continuance on the record. (See generally Doc. No. 88.) Her requests could not be granted under all the circumstances.

This Court has shown considerable patience over the two-year period when confronted with the change of counsel and the failure of Defendants to comply with court orders. But Defendants' conduct has consequences in the law. Their conduct was willful, done in bad faith, and amounted to the kind of culpability that does not warrant setting aside the Default Judgment. Consequently, the Court finds the culpable conduct factor does not support setting aside the Default Judgment.

## V.    CONCLUSION

In sum, all three factors of the balancing test noted above weigh against vacating the Default Judgment under Federal Rule of Civil Procedure 60(b). Further, alternative sanctions short

16

of a default judgment would be ineffective given Defendants' lack of compliance with court orders and their failure to participate in this case.  Accordingly, for the foregoing reasons, Defendant Schwartz's Motion for an Order Vacating the Default Judgment Pursuant to Federal Rule of Civil Procedure 60(b) (Doc. No. 93) will be denied.  An appropriate Order follows.